IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Feb 25, 2013

IN RE:

PATRICK SEAN LOOMIS,

      Debtor.

Case No. 12-11680-M
Chapter 13

## MEMORANDUM OPINION

In this Chapter 13 case, debtor seeks to discharge obligations not dischargeable in a chapter 7 case through a plan that proposes to pay taxes, attorneys fees, and nothing else.[1] Debtor has no income. He relies solely upon the income of his live-in fianceé. The fianceé is under no legal obligation to support the debtor, nor is there evidence of a commitment by her to continue such support. The Chapter 13 Trustee and the debtor's ex-spouse challenge the debtor's good faith and his eligibility to proceed in chapter 13. The threshold question is whether, under these circumstances, the debtor has sufficient and regular income that qualifies him as a Chapter 13 debtor. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014.

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is

---

[1] Since the enactment of the Bankruptcy Act of 1898, bankruptcy and divorce have made for strange bedfellows. Over the years, there has been much jousting over whether obligations incurred in the course of divorce proceedings may be discharged in a bankruptcy case. Most recently, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 rendered virtually all obligations under a divorce decree non-dischargeable in a Chapter 7 case. However, some of these obligations remain dischargeable in a Chapter 13 case.

proper pursuant to 28 U.S.C. § 1409.[2]  Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a).  An objection to the confirmation of a chapter 13 plan is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(L).

## Findings of Fact

Sean Patrick Loomis ("Loomis") and Bobbi Jo Jones ("Jones") were married in 1998.  They had one child, a son, in 2003.  Divorce proceedings began in 2009.  A decree of divorce was entered in April of 2011.[3]  Under the terms of the decree, Loomis was ordered to pay Jones $6,100.00 for "his share of past due bills" incurred during the marriage, and to pay Jones's attorney fees incurred during the divorce.  Loomis was not able to make either of these payments in a lump sum.

On November 1, 2011, Loomis and Jones entered into a consent order in their divorce action that required Loomis to make payments of $50 per month on the $6,100 owed.[4]  Loomis testified that he was able to and did in fact make these payments.[5]  With respect to the award of attorney fees to Jones's counsel in the divorce, Loomis offered to make a payment of $25 per month to counsel, that being all he could afford to pay.  Loomis testified that the offer was refused, and counsel threatened further litigation to collect the fees.  According to Loomis, it was this threat that led to

---

[2] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (West 2013).

[3] *Jones Exh. 1*.

[4] *Loomis Exh. 1*.

[5] The Court is a bit puzzled by his testimony in this regard.  Jones filed a claim in this case for $6,100, the exact amount awarded to her under the decree of divorce.  She filed the claim as a priority claim under 11 U.S.C. § 507(a)(1).  While Loomis objected to the priority status of this claim, he did not object to the amount.  It would seem that if Loomis had made some payments on this claim, the amount of the claim would be less than originally ordered by the divorce court.

the bankruptcy case.

Loomis currently resides in Jay, Oklahoma, with his fianceé, Brandy Kelly ("Kelly"), his 18 year old daughter, her 20 year old son, and the couples' six month old son. Kelly is employed as a kindergarten teacher and owns a 210 acre cattle ranch. Their son has suffered from a variety of health problems since birth and requires constant supervision (as does any infant). Loomis works part time on the cattle ranch, caring for cattle and providing maintenance services for the property. He is not paid a wage for these services. Loomis presently looks after their son while Kelly is teaching, and works on the ranch after she returns home. Kelly is presently Loomis's only source of funds.

Loomis has sought other employment as a machinist, without success. He may soon start part-time work as a handyman at a wage of $10 per hour for approximately 20 hours per week. The nature of this employment and its likelihood are unclear. If Loomis begins working part time, he expects his mother to care for the child during the day.

Loomis filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on June 19, 2012. In his schedules, Loomis lists $163,922.38 in non-priority unsecured claims. Loomis continues to owe Jones $6,100, as well as attorney fees to her lawyer in the divorce action in the amount of $5,248.[6] Each claim has been allowed as a general unsecured claim in this case. Kelly is not listed as a co-debtor on any of the scheduled debts.[7]

At the time he filed his petition for relief, Loomis was employed by DC Jones Machine as

---

[6] *Jones Exh, 3, Claim Nos. 5-1 and 6-1.*

[7] *Docket No. 1* at 29.

a machinist.[8] In his original schedules, Loomis listed net income of $1,673.85 per month. After deduction of his monthly expenses, Loomis claimed monthly disposable income of $85.84. His original plan called for a monthly payment of $85.

Loomis was laid off from his position at DC Jones Machine on July 1, 2012. He has been unemployed since that time. He collected unemployment benefits for a period of time. Those benefits have now expired. On November 16, 2012, some four and one-half months after Loomis lost his job, Loomis filed an amended schedule of income and expenses.[9] In that schedule, Loomis lists as income unemployment benefits of $1,135 per month, as well as a contribution of $260 per month from Kelly. In this set of schedules, Loomis's monthly expenses total $1,308.09, leaving $86.91 in disposable income.

On November 16, 2012, Loomis filed his Second Amended Chapter 13 Plan (the "Plan").[10] Under the terms of the Plan, Loomis proposes to pay the sum of $85 per month for a total of 36 months. The Plan proposes to pay Loomis's attorneys fees and the priority claim of the Oklahoma Tax Commission in full. There are no secured claims provided for under the Plan. With respect to unsecured claims, including those held by Jones and her attorney in the divorce action, the Plan proposes to pay less than one-tenth of one percent of the amount of those claims. For purposes of its decision today, the Court considers the Plan to be a "zero-payment plan"; i.e., a plan that pays nothing to unsecured creditors.

On February 11, 2013, one day before the evidentiary hearing on confirmation of the Plan,

---

[8] *Docket No 1, at 20.*

[9] *Docket No. 34*.

[10] *Docket No. 35.*

Loomis filed a second set of amended schedules of income and expenses (the "Second Amended I and J").[11] In these documents, Loomis listed as his sole source of income a "regular contribution from fianceé" in the amount of $1,005 per month. The Court has no information regarding the expenses incurred by the household or the total income generated by Kelly, except for Loomis's testimony that the cattle ranch operation generated approximately $15,000 in gross income and $9,000 in net income in the past year. Loomis also listed monthly expenses of $919.09, leaving $85.91 in disposable income available for payments under the Plan.

All of the monetary income for the family unit consisting of Loomis, Kelly, his daughter, her son, and their son is generated and managed by Kelly. Loomis does not receive a regular monthly cash payment of $1,005 from Kelly for payment of his expenses. Instead, Loomis receives funds from her at her sole discretion. Loomis has no control over the amount of money (if any) he receives from Kelly or any right to expect money from her on a regular basis.

When it comes to expenses, the items listed on the Second Amended I and J are little more than guesses. Upon cross-examination, Loomis was able to provide little meaningful detail regarding either the income or the expenses, other than to state that Kelly was paying his monthly child support of approximately $270, as well as his plan payment of $85. Each and every time Loomis's financial condition changes, whether it be through loss of a job, loss of unemployment benefits, or increased reliance upon Kelly, his net disposable income remains virtually unaltered. This is most unusual.

Loomis testified that Kelly would continue to provide financial support necessary to fund the Plan and pay his post-petition child support throughout the life of the Plan. The Court has no

---

[11] *Docket No. 45.*

other evidence on this issue. Kelly, though present during the February 12, 2013, evidentiary hearing, did not testify. There is nothing in the record to suggest that she is legally obligated to make these payments in any way, shape, or form.

The Plan has drawn two objections, one from Lonnie D. Eck ("Eck"), the Chapter 13 Trustee, and one from Jones. Eck contends that Loomis is not eligible for relief under Chapter 13, as he is no longer employed. He also argues that the Plan was not filed in good faith, as it proposes to discharge debts not dischargeable in a Chapter 7 case without any meaningful payment to those creditors. Jones's arguments mirror those of Eck.

To the extent the conclusions of law contain items that should be considered findings of fact, those findings are incorporated into the Court's findings of fact by this reference.

## Conclusions of Law

*Eligibility to be a Debtor*

Pursuant to § 109(e), "[o]nly an individual with regular income . . may be a debtor under chapter 13 of this title."[12] The term "individual with regular income" is defined in § 101(30) as an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title, other than a stockbroker or a commodity broker."[13] As one of the finest bankruptcy judges this judge has ever had the privilege of knowing once stated, "[o]ur determination of what constitutes 'regular income' is not limited to the date of filing the petition, but may properly be viewed prospectively."[14]

---

[12] § 109(e).

[13] § 101(30).

[14] *In re Tucker*, 34 B.R. 257, 262 (Bankr. W.D. Okla. 1983) (Bohanon, J.).

Eck and Jones contend that Loomis does not have sufficiently stable income to fund a Chapter 13 plan. They argue that just because Kelly has regular income does not mean that Loomis has regular income, emphasizing that the record contains no detail regarding her income nor any legal or factual commitment by Kelly to make a portion of her income available to Loomis. Without a sufficiently stable source of income, Eck and Jones take the position that Loomis is not eligible to be a debtor in a Chapter 13 case.

Ample case law supports the position that Loomis does not have regular income for purposes of § 109(e). In *In re Heck*,[15] the issue was whether debtor's case, which began as a Chapter 7 and was converted to a Chapter 13, should be reconverted to a Chapter 7 on the motion of a creditor. The creditor claimed that the debtor did not have sufficient and regular income necessary to fund her plan. In *Heck*, the debtor's interior design business did not generate sufficient income to fund her plan. Debtor argued that any shortfall in the plan would be taken care of by voluntary payments from her boyfriend. The bankruptcy court rejected the notion that such voluntary contributions were sufficient to satisfy the requirements of § 109(e):

> These circumstances make clear that the Debtor could not make plan payments without Sutcliffe's contribution of housing, food, and utilities, and perhaps half of the plan payments themselves. As the Bank points out, since the Debtor and Sutcliffe are not married, he has no legal obligation to pay any of her expenses. A leading commentator on Chapter 13, Bankruptcy Judge Keith M. Lundin, reports in his treatise that courts have generally been somewhat willing to consider gratuitous contributions from the non-bankruptcy-filing spouse of a debtor to be "regular income" for purposes of Chapter 13 eligibility, more reluctant when the contributions are from other family members or relatives, and willing to accept them from someone like a boyfriend only when he makes a formal promise to help fund the plan and testifies about his ability to do so. Under circumstances similar to this case, at least two courts have held the debtor did not have sufficient "regular income" to be

---

[15] 355 B.R. 813 (Bankr. D. Kan. 2006).

eligible to be a Chapter 13 debtor.[16]

Other courts have reached a similar conclusion.[17] The Court finds merit in the reasoning of these cases. A gift is by its very nature discretionary. The fact that money has been given in the past, without more, is not proof that similar funds will be supplied in the future. This is especially true where the donor is available to testify and remains silent, and where the donor is not liable for any of the debts at issue in the bankruptcy case.

There are cases where regular income from someone other than the debtor or the debtor's spouse was found to be sufficient for purposes of § 109(e). However, in those cases, the bankruptcy court was provided ample evidence of a commitment by the non-debtor party to contribute to the chapter 13 plan. For example, in *In re Murphy*,[18] the debtor had no separate income and relied solely upon the income of her non-filing significant other. The debtor and her partner had been together for over 11 years. The debtor cared for her partner's twin daughters and his elderly parents during that time period. There was a history of the non-filing partner depositing money into the debtor's account on a regular basis so that the debtor could pay her separate bills. Finally, the non-debtor partner "signed an unconditional written commitment to provide the [d]ebtor with money sufficient

---

[16] *Id.* at 824-25 (footnotes omitted).

[17] *See In re Jordan*, 226 B.R. 117, 120 (Bankr. D. Mont. 1998) ($1,100 per month gift from live-in boyfriend not "stable income" for purposes of § 109(e)); *In re Hanlin*, 211 B.R. 147 (Bankr. W.D.N.Y. 1997) (debtor whose sole source of income was gifts from parents did not qualify as a debtor under § 109(e)); *In re Fischel*, 103 B.R. 44, 49 (Bankr. N.D.N.Y. 1989) (absent legal obligation or legally enforceable commitment to make payments, voluntary contribution by live-in boyfriend not considered sufficiently stable income for purposes of § 109(e)).

[18] 226 B.R. 601 (Bankr. M.D. Tenn. 1998).

to fund the proposed Chapter 13 plan."[19] The bankruptcy court found that "[b]oth [the non-filing partner] and the [d]ebtor presented undisputed and convincing evidence of their commitment to each other and to their collective family and of their intent and ability to fund a Chapter 13 plan."[20]

The evidence in this case is not convincing. Loomis and Kelly have been together approximately 18 months, not over 11 years. Kelly does not give Loomis funds for use in paying his separate bills; instead, she pays all of the household bills from her own accounts. Loomis has no access to or control over these accounts. Kelly has provided no statement to the Court, conditional or otherwise, that she will continue to provide Loomis the funds necessary to make his continuing child support obligations as well as the payments due under the Plan. She is not legally obligated to make payments to Loomis, and is not personally liable for any of the debts scheduled in this bankruptcy case. The Court concludes that Loomis is not "an individual with regular income" as that term is defined in § 101(30), and thus is not eligible to be a debtor in a case under Chapter 13 of the United States Bankruptcy Code. Having reached the conclusion that Loomis is not eligible to be a debtor under Chapter 13, the Court does not reach the issue of good faith.

## Conclusion

The Plan is not confirmed. No leave to file a plan is granted at the present time.[21]

A separate judgment consistent with this Memorandum Opinion is entered concurrently

---

[19] *Id.* at 604.

[20] *Id.*

[21] This ruling leaves the Court in the unusual position of having a pending Chapter 13 case wherein the debtor has been determined not to be eligible for Chapter 13 relief. However, on February 20, 2013, Eck filed a motion to dismiss this case. *See Docket No. 48.* That motion will be resolved in the ordinary course of the Court's business.

herewith.

Dated this 25th day of February, 2013.

BY THE COURT:

TERRENCE L. MICHAEL, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

6509.4